Kevin HARWICK, James Scott, Craig Kudcey, Charles H. Wetzel, Chris Walter, Randy Swanson, and Kenneth Allender,

v.

The BOARD OF SUPERVISORS OF THE TOWNSHIP OF UPPER SAUCON and Coopersburg Homes, Inc., Appellants.

Commonwealth Court of Pennsylvania.

Argued May 8, 1995.

Decided Aug. 17, 1995.

Joseph A. Zator II, for appellant Coopersburg Homes, Inc.

Patrick J. Reilly, for appellees.

Before KELLEY and NEWMAN, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

. . . .

Coopersburg Homes, Inc. appeals an order of the Court of Common Pleas of Lehigh County (trial court) which reversed a decision of the Board of Supervisors of the Township of Upper Saucon (board) and vacated the board's approval of Coopersburg's final subdivision plan, known as Colonial Crest, on October 26, 1993. We reverse.

This appeal involves an interpretation of section 508(4) of the Pennsylvania Municipalities Planning Code (MPC).[1] Section 508(4) provides, in relevant part, as follows:

(4) Changes in the ordinance shall affect plats as follows:

(i) From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. In addition, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided. However, if an application is properly and finally denied, any subsequent application shall be subject to the intervening change in governing regulations.

(ii) When an application for approval of a plat, whether preliminary or final, has been approved without conditions or approved by the applicant's acceptance of conditions, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within five years from such approval.

(iv) Where the landowner has substantially completed the required improvements as depicted upon the final plat within the aforesaid five-year limit, or any extension thereof as may be granted by the governing body, no change of municipal ordinance or plan enacted subsequent to the date of filing of the preliminary plat shall modify or revoke any aspect of the approved final plat pertaining to zoning classification or density, lot, building, street or utility location.

53 P.S. § 10508(4).

Coopersburg submitted a preliminary subdivision plan for the Colonial Crest subdivision to the board and received approval of the preliminary plan, with conditions, on July 12, 1983. In July of 1984, Coopersburg submitted its initial final plan. This final plan was approved, subject to conditions, by the board on October 26, 1993, over nine years after its submission.

During the pendency of Coopersburg's final plan before the board, the Township of Upper Saucon (township) amended its zoning ordinance in 1989. Also during the pendency of Coopersburg's final plan, the township was subject to a township wide sewer moratorium pursuant to the Pennsylvania Department of Environmental Resources' (DER) regulations. It appears from the record that this moratorium was lifted sometime after May 1988 and before September 1989 after the township and the Borough of Coopersburg completed the lengthy process of constructing a new sewage treatment facility.

Kevin Harwick, James Scott, Craig Kudcey, Charles H. Wetzel, Chris Walter, Randy Swanson, and Kenneth Allender (hereinafter collectively referred to as "objectors") are adjacent landowners to or in the neighborhood of the Colonial Crest subdivision. Objectors attended several of the hearings held by the board where approval of Coopersburg's final plan was discussed and the objectors registered their objections to the proposed Colonial Crest subdivision.

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508.

Objectors appealed the board's decision granting approval to Coopersburg final subdivision plan to the trial court alleging that the board's approval violated section 508(4) of the MPC. Objectors alleged that since Coopersburg did not commence or substantially complete any aspect of its approved development within five years of the July 12, 1983 preliminary plan approval, Coopersburg lost the protection of section 508(4)(ii) of the MPC. Therefore, Coopersburg's final subdivision plan must comply with the 1989 changes in the township's zoning ordinance.

Without taking any additional evidence, the trial court reversed the board's decision and vacated the approval of the final subdivision plan granted to Coopersburg by the board on October 26, 1993. Based on its interpretation of section 508(4), the trial court first determined that subsection (i) of section 508(4) was inapplicable to the present situation because preliminary approval was granted in July 1983 and when that situation occurs, the later subsections are applicable.

Next, the trial court concluded that subsection (ii) of section 508(4) provided Coopersburg with five years from the date of preliminary plan approval to commence and complete any aspect of the approved development in order to fall within the protected period and since Coopersburg failed to do so, it was not protected from complying with the 1989 ordinance changes. Relying on this court's decision in *Bloom v. Lower Paxton Township*, 72 Pa.Commonwealth Ct. 532, 457 A.2d 166 (1983), the trial court rejected Coopersburg's contention that it could not commence, let alone complete, work on the project because final plan approval had not been given by the board due to the sewer moratorium. In *Bloom*, this court held that a developer who is unable to obtain the required state permits to proceed with his development must seek final approval under section

508 even if he can only receive conditional final approval.

■ Finally, the trial court determined that Coopersburg did not seek and the board did not grant an extension of the five year period as provided for in section 508(4)(iv). The trial court concluded that the record merely reflected that Coopersburg granted the board certain extensions under section 508(3) of the MPC so that the board's delay in granting final approval would not be a deemed approval of the final plan after its submission in July of 1984.[2] This appeal followed.[3]

Coopersburg raises the following issues on appeal: (1) Do zoning changes occurring while a developer's plan is pending review negate the board's grant of final plan approval which is granted more than five years after preliminary plan approval; (2) Did the board abuse its discretion or commit an error of law in approving Coopersburg's final subdivision plan in concluding that the five year period found in section 508(4) of the MPC had been extended through the time of final plan approval.

First, Coopersburg argues that the board's grant of approval to the final subdivision plan is valid because the preliminary plan approval and the five year protection period do not eliminate the independent protection afforded to a pending final plan found in section 508(4)(i). Coopersburg takes the position that there is no basis for ignoring the first sentence of subsection (i) as the introduction to the second sentence of subsection (i) with the words "in addition," clearly indicates a legislative intent to add additional and supplemental provisions. Coopersburg argues that the words do not indicate an intent to replace the standards just set forth in the prior sentence. In effect, Coopersburg is arguing that once it submitted its final subdivision plan for approval, the first sentence of

**2.** Section 508(3) provides, in relevant part, that all applications for approval of a plat whether preliminary or final shall render its decision and communicate it to the applicant not later than 90 days following the date of the regular meeting of the governing body next following the date the application is filed. 53 P.S. § 10508(3).

**3.** In a land use appeal, where, as here, the trial court has not taken any additional evidence, this court's scope of review is limited to a determination of whether the governing body (in this case, the board of supervisors) committed an error of law or abused its discretion. *Herr v. Lancaster County Planning Commission*, 155 Pa.Commonwealth Ct. 379, 625 A.2d 164 (1993).

subsection (i) is the only part of section 508(4) that is applicable notwithstanding the fact that the board had previously granted Coopersburg's preliminary plan approval.

As set forth previously in this opinion, the first sentence of subsection (i) provides, in relevant part, that:

> From the time an application ... whether preliminary or final, is duly filed ... and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.

53 P.S. § 10508(4)(i).

The second sentence of subsection (i) provides that "In addition, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided." *Id.*

Pursuant to the Statutory Construction Act of 1972,[4] "Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

■ Based on the unambiguous language of section 508(4)(i), an acceptance of Coopersburg's interpretation of subsection (i) would require a result which effectively ignores the remaining provisions of section 508(4). Clearly, the second sentence of subsection (i) is a qualifier to the first sentence and requires that when a preliminary plan has been approved, final approval shall be in accordance with the remaining provisions of section 508(4).

Accordingly, the trial court did not err in holding that the first sentence of subsection (i) was inapplicable to the present situation

because Coopersburg had received approval of its preliminary plan prior to the submission of its final plan. Therefore, the trial court correctly held that approval of Coopersburg's final subdivision plan was governed by the remaining provisions of section 508(4).

Next, Coopersburg argues, in the alternative, that if the five year period does apply herein, then the course of dealing between Coopersburg and the board over many years, evidences an extension of the five year period. In response, objectors contend that the record is completely devoid of any evidence that an extension of the section 508(4) five year period was granted by the board to Coopersburg.

Pursuant to section 508(4)(ii), Coopersburg was protected from any changes in the township's zoning ordinance affecting its right to commence and to complete any aspect of the approved development in accordance with the terms of the approval for a period of five years. It is undisputed that Coopersburg did not commence any work or complete any aspect of the approved development in accordance with the terms of the approval of its preliminary plan within five years of receiving such approval. However, section 508(4)(iv) provides that where the landowner has been granted an extension of the five year period by the governing body, the landowner will not be subject to any changes in a municipal ordinance enacted subsequent to the date of filing of the preliminary plan.

■ Section 508(4)(iv) does not specify how or in what manner such an extension may be granted. Therefore, we must determine if the record supports the conclusion advocated by Coopersburg that an extension of the five year period has been effectively granted by the board.

Coopersburg contends that the various extensions that it granted to the board pursuant to section 508(3) of the MPC were accepted by the board due to the township wide sewer moratorium imposed by the township pursuant to DER regulations. Coopersburg argues that the board still had the right to deny plan approval for failure to meet ordi-

4. 1 Pa.C.S. §§ 1501—1991.

nance or other legal requirements and that the board approved the extensions with the understanding that the extension did relate to section 508(4)(iv) of the MPC.

The record reveals that Coopersburg corresponded with the board on several occasions either through letters written on Coopersburg's own letterhead or on a form letter provided to Coopersburg by the board. A review of this correspondence reveals that the purpose of the form letter provided by the board was twofold: (1) to request that the board table further consideration of the final subdivision plan and hold in abeyance any action until the time specified; and (2) due to this request, to grant to the board an extension of the time limit found in section 508(3) of the MPC in which the board was required to take action or render a decision regarding Coopersburg's final subdivision plan.

The letters dated prior to September 5, 1989, do not specify any reason as to why Coopersburg is requesting that the board table consideration of its final plan and, therefore, granting a time extension to the board. However, the minutes of the September 5, 1989, meeting of the township planning commission regarding the final subdivision plan for Colonial Crest state that "[t]he plan was put on hold because of lack of sewage capacity. Time extensions were granted until capacity was available." Reproduced Record (R.) at 36a.

The letters dated after September 5, 1989, specifically the form letters, indicate various reasons for granting the board an extension with the most common reasons being to finalize plan details and to obtain the necessary permits from the Pennsylvania Department of Transportation. None of the letters mention the sewer moratorium as a reason for the requested abeyance of consideration and the granting of the extension.

Minutes of the meetings of the planning commission held after September 5, 1989, state that Coopersburg's final subdivision plan was submitted under the prior ordinance and was still being reviewed under that ordinance. R. at 98a, 115a. During the September 1, 1992 meeting of the planning commission, objectors raised the issue of whether Coopersburg had the right to proceed under the old ordinance. R. at 116a. As a result, the board requested that its solicitor render an opinion as to which ordinance was applicable to Coopersburg's final subdivision plan. R. at 117a. The solicitor rendered a written opinion to the board, dated November 2, 1992, recommending that Coopersburg's final subdivision plan be reviewed without regard to ordinance changes which took place after the preliminary plan approval. R. at 126a.

The solicitor's opinion was based on the township's pending sewer problems which resulted in the board accommodating Coopersburg, as well as other developers with pending plans by liberally accepting written extensions of decision deadlines. R. at 115a. This, the solicitor opined, was within the power of the board under both sections 508(3) and 508(4) of the MPC. The board accepted its solicitor's opinion and continued to consider Coopersburg's final subdivision plan under its previous ordinance. R. at 133a.

■ It is undisputed that the record does not contain an expression of formal action by the board which granted an extension of five year protective period to Coopersburg under section 508(4)(iv). However, it is clear to this court that the course of dealings between the board and Coopersburg and the surrounding events as set forth in the record, indicate that the board did indeed grant Coopersburg an extension of the five year period found in section 508(4)(ii) of the MPC. As there are no requirements in section 508 governing the manner in which the board may grant such an extension, the board herein had the authority to grant an extension pursuant to section 508(4)(iv) of the MPC whether it did so formally or through other actions reflecting an intent to grant such an extension.

This court recognizes that we held in *Bloom* that a developer, who is unable to obtain required state permits, must seek final approval under section 508 of the MPC, even if he only can receive conditional final approval and that merely seeking an extension from the governing body of the protective period granted under section 508 does

not relieve a developer of this requirement. However, in *Bloom,* the governing body refused to grant an extension of the protective period and the developer was less than diligent in submitting his final plan after receiving preliminary plan approval.

In the present case, the record shows that the board readily cooperated with Coopersburg and tabled consideration of Coopersburg's final plan until the sewer moratorium was lifted by accepting Coopersburg's grant of time extensions to the board. In addition, Coopersburg submitted its initial final plan within a year of receiving preliminary plan approval and once the sewer moratorium was lifted, submitted revised final plans. In *Bloom,* it was only after a lengthy delay and an order of this court that the developer submitted additional plans to the governing body.

Accordingly, for the reasons set forth in this opinion, the order of the trial court is reversed and the decision of the board granting final subdivision plan approval to Coopersburg for the Colonial Crest subdivision is reinstated.

### ORDER

NOW, this 17th day of August, 1995, the order of the Court of Common Pleas of Lehigh County, dated September 14, 1994, at No. 93–C–2803, is reversed and the decision of the Board of Supervisors of the Township of Upper Saucon in this matter is reinstated.